# Exhibit A

J. LLEWELLYN MATHEWS
Attorney-at-Law
N.J. Attorney i.d.# 4591973
309 Fellowship Road, Suite 200
Mt. Laurel, NJ 08054
609-519-7744 (voice)
609-257-4110 (fax)
(Client hours by appointment only)
jlmathews@jlmesq.com

And:
CHIMICLES & TIKELLIS LLP
One Haverford Centre
361 W. Lancaster Ave.
Haverford, PA 19041
(610) 642-8500
Benjamin F. Johns (NJ-ID 03818-2005)
Andrew W. Ferich (NJ-ID 01505-2012)
bfj@chimicles.com
awf@chimicles.com

*Attorneys for Plaintiffs and the Putative Class*

| | |
|---|---|
| CHAD UDEEN and MARY JANE JEFFERY, on behalf of themselves and all others similarly situated,<br><br>               Plaintiffs,<br><br>      v.<br><br>SUBARU OF AMERICA, INC.,<br><br>            Defendant. | SUPERIOR COURT OF NEW JERSEY<br>CAMDEN COUNTY – LAW DIVISION<br>DOCKET NO.:<br><br>Civil Action<br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiffs Chad Udeen and Mary Jane Jeffery ("Plaintiffs"), by and through their attorneys, individually and on behalf of all others similarly situated (the "Class" as defined below), allege as follows upon personal knowledge as to themselves, and as to all other matters upon information and belief, and based upon the investigation undertaken by their counsel.

### INTRODUCTION

1.   This is a class action lawsuit brought against Subaru of America, Inc. ("Subaru" or "Defendant") by Plaintiffs on behalf of themselves and a class of current and former owners and lessees of the 2018 Subaru Outback, 2018 Subaru Legacy, 2018 Subaru Crosstrek, 2017-2018 Subaru Imprezas, and 2018 Subaru BRZ (the "Class Vehicles" or "Vehicles").[1]

2.   The Class Vehicles are equipped with Starlink infotainment systems ("Starlink system"). The Starlink system is a touchscreen multimedia and video interface (often referred to as an in-car entertainment or in-vehicle infotainment system) in the center console that includes the visual for the back-up camera, controls the audio and radio system, cell phone connectivity, weather information, navigation, and more.  The main physical component of the infotainment system is called the

---

[1] Plaintiffs reserve the right to amend or add to the vehicle models included in the definition of Class Vehicles after conducting discovery.

- 2 -

head unit. On information and belief, the same generation of head unit is in all of the Class Vehicles.

3.     Below is what Defendant promises its customers with respect to its Starlink system, right on its homepage[2]:



[2] https://www.subaru.com/engineering/starlink.html (last visited Nov. 25, 2018).

## STARLINK Multimedia

STARLINK Multimedia connects you and your Subaru to music, news, navigation, podcasts, and more.
Wireless pairing and hands-free smartphone operation allow for safe and easy access to your favorite apps
and content.



4.    But rather than providing an "extra safe[]," "convenient" infotainment system that allows "safe and easy" access and use, Subaru sells and leases automobiles equipped with a defective infotainment system that causes extreme headaches for lessees and owners, and poses a safety risk to operators, passengers, and other drivers on the road.

5.    Unfortunately for purchasers and lessees of Class Vehicles, the Starlink system is defective. As discussed in more detail below, the Starlink system suffers a range of technical glitches that cause it to freeze, become non-responsive, or otherwise malfunction, causing great inconvenience and safety

concerns.  Although these problems manifest themselves in a variety of ways, they are all related to the same problematic head units.

6.   Subaru is aware of the defect, but has been unable to eliminate the problems.  Subaru's knowledge is evidenced by a number of service bulletins it issued related to the problem and by the overwhelming number of consumers who have complained about glitches, including when consumers have brought in their Class Vehicles for repairs related to the issue.  Subaru has taken several steps to try and fix the defects in the infotainment system such as issuing software updates and other technical service guidance to dealerships.  These attempts, however, have failed to remedy the defect.  Class Vehicle owners and lessees who took their vehicles to dealerships have received, at most, software updates that do not fix the problems or replacement head units subject to the same defects.

7.   The Starlink system defect has caused many Class Vehicle owners and lessees significant inconvenience and loss of use of key features of their vehicles.  Many owners and lessees have had to take their new vehicles back to the dealership, often on multiple occasions, and still continue to have problems with their infotainment systems.  Some owners have had their head units replaced multiple times, if their dealers are able to get replacement head units.

- 5 -

8.   Many Class Vehicle owners and lessees have been told that head unit replacements are on backorder for up to six months or even indefinitely.  Others who have received replacements had to wait weeks or months.

9.   Class Vehicle owners and lessees have been deprived of use of key features of their vehicles for significant stretches of time due to the defective Starlink systems, while enduring the potential for safety concerns due to the defect.

10.   In order to redress this deprivation and other harm, Plaintiffs bring claims for violations of Ohio, Tennessee, and Florida consumer protection statutes, breach of express warranty, breach of the implied warranty, violations of the Magnuson-Moss Warranty Act, common law fraud, and unjust enrichment.

## JURISDICTION AND VENUE

11.   This Court has jurisdiction over Defendant because it is headquartered and regularly conducts business in this state, and otherwise has sufficient minimum contacts with New Jersey to justify the exercise of jurisdiction.

12.   Venue properly lies in Camden County, New Jersey, because Defendant is headquartered in and regularly conducts business in Camden County.

## THE PARTIES

**Plaintiff Chad Udeen**

13.  Plaintiff Chad Udeen is a citizen of the state of Tennessee.

14.  In February of 2018, Plaintiff Udeen leased a new 2018 Subaru Outback from Ganley Subaru, an authorized Subaru dealer and repair center located in Ohio.

15.  Plaintiff Udeen purchased his vehicle for personal, family, or household use.

16.  Plaintiff, who has young children, chose to lease a 2018 Subaru in large part because of the safety features controlled through the Starlink system and head unit, including the backup camera.

17.  Plaintiff began experiencing problems with the Starlink system in his Class Vehicle soon after purchasing it. Within a few days the screen went blank several times while in use.

18.  These problems got progressively worse until the head unit in Plaintiff's vehicle died completely in April of 2018. The screen went permanently blank and Plaintiff was left without functionality of any of the features controlled by the infotainment system.  This included many of the safety features that were the reason Plaintiff decided to lease a Subaru as well as all entertainment and audio features.

19.   Because of having young children and the layout of his neighborhood, Plaintiff especially needs the use of a backup camera.

20.   Plaintiff immediately began attempting to contact both Subaru headquarters and multiple Subaru dealers numerous times.

21.   After several weeks without a response, Plaintiff was eventually told that replacement head units were on backorder.

22.   Eventually in July of 2018, the Service Manager at a Subaru dealership in Nashville contacted Plaintiff to bring his car in.  After driving to the dealership and waiting all day, Plaintiff was told again that the part was on backorder and sent home, still without a working head unit.

23.   Plaintiff continued to contact Subaru and was consistently told that head unit replacements were on backorder.

24.   Only on September 11, 2018, after driving around for approximately six months without any of the features controlled by the infotainment system, did Subaru finally replace Plaintiff's head unit.

25.   Plaintiff still experiences problems with his replacement unit, including static and frequent problems with the audio functions.

26.   Had Plaintiff known about the infotainment system problems at the time of lease, he would not have leased his Class Vehicle, or would have paid substantially less for it.

- 8 -

**Plaintiff Mary Jane Jeffery**

27.  Plaintiff Mary Jane Jeffery is a resident of the state
of Florida.

28.  On or about February 12, 2018, Plaintiff purchased a
new 2018 Subaru Outback 3.6 (VIN: 4S4BSENC8J3289739) from Bert
Smith Subaru, an authorized Subaru dealer and repair center
located in St. Petersburg, Florida.

29.  Plaintiff purchased her vehicle for personal, family,
or household use.  Her vehicle is registered in Florida.

30.  On or about July 5, 2018, the infotainment system on
Plaintiff's Class Vehicle went completely blank, rendering all
functions inoperable.

31.  On the same day, Plaintiff brought her Class Vehicle
into the dealership where it was inspected by a service
technician who ordered a new replacement head unit.  Plaintiff
had to wait for several weeks before the dealership was able to
acquire a replacement.  During this time Plaintiff continued to
have zero functionality of any features associated with the
infotainment system.

32.  In or around the first week of October 2018,
Plaintiff's replacement head unit also failed.  The dealership
told her it would need to be replaced again.

33.  This time a head unit replacement was on backorder for
an even longer period of time.  After about a month of waiting,

- 9 -

Plaintiff called Subaru's corporate office.  She was then contacted by the dealership a week later and told that she was third in line for a replacement head unit.

34.  Plaintiff asked whether the new replacement system, when it finally arrived, would be guaranteed to not have any of the same problems as her last two units, the service technician responded that they could not guarantee the replacement head unit would not run into the same problems.

35.  After waiting approximately six weeks on a second replacement head unit that was not guaranteed to be completely free of similar failure, Plaintiff decided to trade in her Class Vehicle into the dealership and purchased another brand of automobile.

36.  Had Plaintiff known about the Starlink system defects at the time of purchase, she would not have bought her Class Vehicle, or would have paid substantially less for it.

**Defendant**

37.  Defendant Subaru is a New Jersey corporation with its principal place of business located in Camden, New Jersey.

38.  Subaru is engaged in the business of designing, manufacturing, warranting, marketing, advertising and selling vehicles under the "Subaru" brand name, including the Class Vehicles, through a network of more than 600 dealerships in the United States.

## FACTUAL ALLEGATIONS

39.   In the last decade, infotainment systems have become the norm in new automobiles.  These systems are the centerpiece of modern cars and attract buyers and lessees who want to manage available technology while on the road, while minimizing distractions, and maximizing safety.  Infotainment systems are essentially the gateway between the user and the vehicle's safety, navigation, communications, entertainment and smart phone connectivity features in the vehicle.

40.   The Starlink system is Subaru's version of the infotainment system. It is a touchscreen multimedia and video interface in the center console that includes the visual for the back-up camera, controls the audio and radio system, cell phone connectivity, weather information, navigation, and more. Drivers can connect their smart phone to the Starlink system via Bluetooth, Apple CarPlay, or Android Auto.

41.   The Class Vehicles feature an updated Starlink system from previous model years, consisting of Harman Gen 3 Audio and Navigation Head Units.

42.   The Starlink system features prominently in Subaru's marketing of the vehicles.

43.   For example, Subaru's website contains numerous advertisements demonstrating the Starlink system operating with

ease.[3] One advertisement on its website says drivers can "get and stay connected with ease"; that "Starlink allows you to safely keep your hands on the wheel, and attention on driving . . . ."; and that "controlling the system is easy, done via the intuitive touch screen, steering wheel controls, or voice commands, without picking up your device."[4]

44.   None of these advertisements are accurate.  That is because the Starlink system suffers from a range of technical glitches including: (a) back-up camera freezes and/or shut downs; (b) failure of the system's head unit with resulting loss of audio and radio functions; (c) complete system lock-up/error message displayed on infotainment system that only goes away after vehicle is turned off for several hours and then turned back on to properly reset entire system; (d) display shuts off even though functions of infotainment system remain working; (e) inability to shut radio/audio off or turn  high volume level down (set automatically by way of technical glitch) when backing up; (f) radio automatically comes on at high volume when the car is turned on, even if the radio was off when the car was last turned off; (g) favorites from smartphone or connected device not being saved to the system; (h) audio/radio functioning is

---

[3] https://www.subaru.com/engineering/starlink/multimedia.html (last visited Nov. 26, 2018).
[4] *Id.*

erratic, in that radio/audio will turn off at random intervals then come back on suddenly without warning; (i) touchscreen controls unresponsive; and (j) Bluetooth connectivity issues preventing phones from connecting properly and calls from being made as well as disabling Apple CarPlay or Android Auto functionality with the system.

45.   At best, when the defect manifests, it presents an extreme inconvenience—at worst, it presents a safety concern. Many consumers identify that even after totally powering down their Class Vehicles and turning off the engine, the Starlink screen remains frozen on the infotainment display. This can result in car battery drain, and can cause car batteries to die. Naturally, the Starlink system's proclivity to drain Class Vehicle batteries is a safety concern, as it can result in owners and lessees being stranded and without transportation.

46.   Furthermore, Class Vehicles owners and lessees who rely on a frozen back-up camera screen may not realize that the displayed rear view is not in real time and may hit a pedestrian or experience a collision.

47.   Class Vehicle owners and lessees sometimes have to go hours, days or even weeks without use of features such as their radio/audio system, navigation, smart phone connectivity functions, or back-up cameras.  In some cases the head unit dies completely and has to be replaced.  Consumers report that it

takes weeks or months until the dealership can order a replacement, during which time the driver is left with no infotainment system.  When a replacement head unit is finally installed, it experiences the same issues, because Subaru has not fixed the defect.

48.  Many Class Vehicle owners and lessees continue to experience problems with their Starlink systems after dealerships have installed the latest software update. Some Class Vehicle owners and lessees report having had their head units replaced multiple times.

49.  Currently, owners and lessees are hearing from Subaru dealerships that replacement head units are on backorder for up to six months or for an indefinite period of time.

50.  Plaintiffs' experiences are by no means isolated or outlying occurrences.  Indeed, the internet is replete with examples of message boards and other websites where consumers have complained of the exact same head unit defect with the Class Vehicles.

51.  Owners and lessees of the Class Vehicles have publicly complained to about the various technical issues affecting the Starlink system in their vehicles. The following are some of the

complaints submitted on forums and social media websites by

Class Vehicle owners[5]:

Richie P., Facebook, 8/30/18[6]

    My 18 Outback has started doing this. One day it's just
a dead black screen and won't turn on and next day it
works. Also has a nasty rattle in the dash that the
dealer can't fix. This is my fifth Subaru but I'm really
starting to question the quality control.

Brad G., Facebook, 8/27/18[7]

    "Also the Audio/Navigation (Harmon Kardon Head unit")
was frozen. No audio, no GPS, no backup camera, and
would not shut off (even overnight). If you Google
"Outback/Head unit" you will see a lot of complaints
(even a class action suite). I've had problems with the
unit being unresponsive, hung, frozen image from the
backup camera when you're in drive. You'd have to pull
over and shut off the vehicle, or sometimes shut off and
wait 30 minutes before the problem would clear itself.
But this time it was locked up solid. I received a call
from the service department at @SubaruofGwinnett later
that day on the 16th. Saying the that the Head Unit was
on backorder and they wouldn't have an ETA till the
following Monday. Mon/Tue/Wed no call back. I called the
service department and left messages Wed/Thur/Fri. Still
NO call back from Subaru 10 days later. This isn't
normal for Subaru of Gwinnett. I just don't understand
why they won't call and give me a status."

Elkasdad, Subaru Owner's Forum, 8/27/18[8]

    "I'll be heading in for the second replacement head unit
since buying the Outback brand new in January 2018.
First, they tried a firmware update, then they replaced

---

[5] The following complaints are reproduced as they appear online. Any
typographical errors are attributable to the original author.
[6] *Id.*
[7] https://www.facebook.com/SubaruofGwinnett/posts/2053317494681336 (last
visited Sept. 21, 2018).
[8] https://www.subaruoutback.org/forums/138-gen-5-2015-2019/441921-2018-8-
head-unit-freezes-20.html (last visited Sept. 21, 2018).

the entire head unit, now it's dead again. Bonus: even
after having to replace this head unit once already,
they can't have a replacement ready for your
appointment. By order of the head unit manufacturer (I
think its Harman Kardon) the Subaru dealer must first
have you in for a diagnosis (1-2 hours) which they then
send to Harman Kardon, and then you have to make a
second appointment after the 5-7 days it takes Subaru to
get the replacement (probably re-built) head unit. This
is especially great when you live an hour from the
dealership. We're talking at least 4 hours of driving,
and probably two different days with a loaner, so they
can replace the head unit for the second time in the
first 8 months of owning this $40K car."

Jacobsc, Subaru Owner's Forum, 8/8/18[9]

"My 2018 Outback Limited has about 4500 miles. I turned
it off and everything was fine. Later, when I started
it, the display was blank, radio not playing (as it
always does when I start it), navigation blank, nothing
at all on screen, no backup camera. I called the
dealership and they were clueless, so I have to take the
car in and leave it on Saturday."

Billy1956, Subaru Owner's Forum, 8/6/18[10]

Picked up a 2018 Outback Limited with Eye Sight Friday.
Multimedia Screen froze off an on all weekend. Took it
to dealer today and they updated to U0.18.22.20. I
stopped for gas and with engine off cleaned the screen.
When I started the car the screen went nuts jumping from
station to station, FM to AM, to Sirius. Stopped and
turned off waited about 15 minutes and was back to
normal.
not sure if the update fixed anything?

Granthac, Subaru Owner's Forum, 9/20/18[11]

---

[9] https://www.subaruoutback.org/forums/138-gen-5-2015-2019/441921-2018-8-head-unit-freezes-19.html (last visited Sept. 21, 2018).
[10] https://www.subaruoutback.org/forums/138-gen-5-2015-2019/496579-new-software-18-infotainment-released-2.html (last visited Nov. 21, 2018).
[11] https://www.subaruoutback.org/forums/138-gen-5-2015-2019/445258-2018-outback-starlink-radio-issues-11.html (last visited Sept. 21, 2018).

"Well my radio totally crapped out the other day. Took it to the dealership and they said i have to wait for them to order a new amplifier and head unit, which will take at least a week. I've already been in once for carplay problems. This bums me out as the car is only 8 months old!? You're killing me Subaru."

Mbpeters75, Subaru Owner's Forum, 9/18/18[12]

"The radio on my 2018 Outback (Limited w/ Starlink 9" display), which I purchased just before Easter, stopped working last night. All of the buttons are illuminated, but the display is black. CD will not eject, no sound and rear back up camera and sensors aren't available, etc. I have an appointment tomorrow, interested in what the dealership will say (if this is common). It's under warranty, of course, but a hassle. Really like the car otherwise."

BerkeeAJ, Subaru Owner's Forum, 9/2/18[13]

"2018 Limited purchased last October. 2-3 weeks ago the headunit went completely blank. The dealer ordered a new unit and it took 8 days for it to come in, so was without unit the entire time. Head unit was replaced, then a week later, the bluetooth functions shut down completely for half a day or so and then came back on I'd been in contact with Subaru and they've been very accommodating which is nice, but for a car less than 1 year old I'm on my 3rd head unit which is a rebuilt unit."

BenignBodger, Subaru Owner's Forum, 9/19/18[14]

I just this minute got back from my dealer's service department. Received the news that my head unit was not able to be reset and reprogrammed and that I would be without it for... Well they didn't actually say how long it might be but that they had to try to get a replacement from the maker, not Subaru, and in the past

---

[12] https://www.subaruoutback.org/forums/138-gen-5-2015-2019/445258-2018-outback-starlink-radio-issues-10.html (last visited Sept. 21, 2018).

[13] https://www.subaruoutback.org/forums/138-gen-5-2015-2019/465882-2018-infotainment-update-who-still-having-issues-34.html (last visited Sept. 21, 2018).

[14] *Id.*

this has taken anything up to a month. Am I pissed off?
Yes, for that amount of money spent on a car only eight
months ago they should at least have parts on hand. Why
isn't Subaru sending notifications to people with the
Harmon Kardon head units? The manager said that it is
likely 20% of them having serious issues and if they did
the reprogramming before a total meltdown many might be
avoided.

From NHTSA, 2/20/18[15]

8" NAVIGATION/DISPLAY FROZEN. NO BACK-UP CAMERA WHEN IN
REVERSE. DOES NOT RESPOND TO INPUTS EITHER ON THE
DISPLAY OR FROM STEERING WHEEL. "POWER" SWITCH DID NOT
POWER DOWN THE UNIT. STOPPING THE ENGINE AND RESTARTING
DID NOT RESET THE UNIT. STOPPING THE ENGINE, OPEN AND
CLOSE THE DRIVERS DOOR AND RESTARTING DID NOT RESET THE
UNIT. REMAINED INOPERATIVE DURING MORNING COMMUTE (30
MIN). CENTER CONSOLE REMAINED ON AFTER EXITING AND
LOCKING THE CAR. AFTER 9 HOURS THE BATTERY WAS DRAINED
AND THE ENGINE WOULD NOT START. AFTER A JUMP-START, THE
UNIT DID RESET AND SEEMS TO BE WORKING NORMALLY. THERE
SHOULD BE A WAY TO POWER-DOWN (REBOOT) THE
NAVIGATION/RADIO DISPLAY WITHOUT HAVING TO STOP THE CAR
AND RESTART THE ENGINE.

From NHTSA, 8/1/18[16]

THE RADIO HEAD UNIT WILL RANDOMLY NOT CONNECT TO APPLE
CAR PLAY. IT WILL ALSO GET STUCK ON A FM RADIO STATION
AND NOT RESPOND TO ANYTHING UNTIL THE BATTERY IS
DISCONNECTED. THIS HAPPENS WHILE DRIVING AND THERE IS NO
WAY TO CONTROL THE VOLUME OR ANYTHING. I HAVE BEEN FOR
SOFTWARE UPDATES.

From NHTSA, 9/10/18[17]

THE STARLINK ENTERTAINMENT AND NAVIGATION SYSTEM (8"
SCREEN) PERIODICALLY FREEZES WHILE DRIVING. WHEN FROZEN,

---

[15] https://www.nhtsa.gov/vehicle/2018/SUBARU/OUTBACK/SW/AWD#complain
ts (last visited Nov. 19, 2018).
[16] https://www.nhtsa.gov/vehicle/2018/SUBARU/OUTBACK/SW/AWD#complain
ts (last visited Nov. 21, 2018).
[17] https://www.nhtsa.gov/vehicle/2018/SUBARU/CROSSTREK/SW/AWD (last
visited Nov. 21, 2018).

THE TOUCHSCREEN WILL NOT WORK AND THE SYSTEM IS USELESS.
SOMETIMES THESE IS NO SOUND AND AT OTHER TIMES IT IS
MAXIMUM VOLUME. AFTER SHUTTING OFF THE VEHICLE FOR AT
LEAST FOUR HOURS, THE SYSTEM WILL UNFREEZE.

Silent Russian, YouTube, 6/16/18[18]

Video of 2018 Outback showing the infotainment screen
frozen and music playing that cannot be shutoff or
turned to a lower volume.

Percy V., YouTube, 9/25/17[19]

Videos of 2018 Outback showing the infotainment screen
completely frozen on the Subaru Starlink screen even
when the car is turned off.

52.  Subaru is aware of the defect in the Starlink system.
In the first place, it has received droves of complaints from
consumers about this issue.

53.  Subaru has also issued at least two software updates
in attempt to fix problems with the head units: one on or about
December 19, 2017 (version 2.17.43.30) and the most recent on or
about July 25, 2018 (version 0.18.22.20).

54.  Both software updates, version 2.17.43.30 and version
0.18.22.20, purported to provide optimization to the new Harman
Gen 3 Audio and Navigation head units.  However, neither of
these updates fully eliminated the defect. While some of the
issues reported may have been alleviated and the frequency of

---

[18] https://www.youtube.com/watch?v=MGDo2U0r27A (last visited Nov. 23,
2018).
[19] https://www.youtube.com/watch?v=4no5-jFanIU;
https://www.youtube.com/watch?v=C1xt4Zu59Lw (last visited Nov. 23, 2018).

manifestation lessened, Class Vehicle owners and lessees continue to experience issues with their systems despite the software updates.

55.  Subaru has issued a number of Technical Service Bulletins ("TSBs") as well relating to problems with the infotainment system and head unit in the Class Vehicles.  The TSBs relate to software updates, guidance on installation of the updates, a replacement for the audio system amplifier in order to correct audio and volume problems, troubleshooting tips to diagnose problems with Bluetooth, Apple CarPlay, and Android Auto connectivity.  Despite these steps, vehicle owners continue to experience problems with their infotainment systems.

56.  In January 2018, Subaru even sent out a survey to some customers and dealerships "to help identify, and in some cases address, customer concerns" with the infotainment system.

57.  The head unit in Class Vehicles debuted in the 2017 Subaru Impreza.  Customers began experiencing enough problems with the head unit that Subaru issued a recall in March of 2017 to install new software to fix problems with the backup cameras. The associated TSB indicates that Subaru was also aware of many of the problems now reported in all the Class Vehicles, including screen freezing and audio/volume issues.

58.   Subaru also acknowledged in the TSB related to the 2017 Impreza that failure of the backup camera results in "an increased risk of injury or a crash."

59.   Despite knowing about these problems with the head units in at least early 2017, Subaru proceeded to put the same head unit into most of its 2018 vehicle lineup without eliminating the problems.

60.   A prospective TSB dated for July 2, 2019, indicates that Subaru intends to release another software update next year. Subaru's prospective TSB scheduled for release some seven months from now is a clear indication and recognition by Subaru that the defect remains unresolved and that it has no plans of fixing the defect any time soon.[20]

61.   Because of Subaru's actions, Class Vehicle owners have suffered damages in the form of loss of use of key features of their Class Vehicles for extended periods of time, loss of safety features, loss of entertainment features, and lost time and expense involved in contacting Subaru and waiting at dealerships.

---

[20]*See* https://www.nhtsa.gov/vehicle/2018/SUBARU/OUTBACK/SW/AWD#manufacturerCommunications (last visited Nov. 28, 2018).

## CLASS ACTION ALLEGATIONS

62. This action is brought, and may properly proceed, as a class action, pursuant to New Jersey Court Rule 4:32(b)(3).

63. Plaintiffs seek certification of a Class defined as follows:

> **All persons in the United States who bought or leased a Class Vehicle with a Starlink infotainment system.**

64. The class is collectively referred to hereafter as the "Class." Excluded from the Class is Defendant, its affiliates, employees, officers and directors, persons or entities that purchased the Class Vehicles for resale, and the Judge(s) assigned to this case. Plaintiffs reserve the right to modify, change, or expand the class definitions if discovery and/or further investigation reveal that they should be expanded or otherwise modified.

65. **Numerosity**: The Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class is unknown at this time, such information being in the sole possession of Defendant and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe, and on that basis allege, that tens of thousands of Class Vehicles have been sold and leased nationwide.

66. **Existence/Predominance of Common Questions of Fact and Law:** Common questions of law and fact exist as to all members of the Class.   These questions predominate over the questions affecting individual Class members.   These common legal and factual questions include, but are not limited to:

      a.    whether Subaru engaged in the conduct alleged herein;

      b.    whether the Starlink systems equipped in Class Vehicles are defective;

      c.    whether Subaru placed Class Vehicles into the stream of commerce in the United States with knowledge of the defect in the Starlink system;

      d.    whether Subaru knew or should have known of the defect, and if so, how long it knew of this defect;

      e.    when Subaru became aware of the defect in the Class Vehicles' Starlink systems;

      f.    whether Subaru knowingly failed to disclose the existence and cause of the defect in the Class Vehicles;

      g.    whether Subaru's conduct alleged herein violates consumer protection statutes, false advertising laws, warranty laws, and other laws as asserted herein;

      h.    whether Plaintiffs and Class Members overpaid for their Class Vehicles in light of the defect;

i.    whether Plaintiffs and Class Members are entitled to damages, including punitive damages, as a result of Subaru's conduct alleged herein, and if so, the amount or proper measure of those damages; and

j.    whether Plaintiffs and Class Members are entitled to equitable relief, including but not limited to restitution and/or injunctive relief.

67.   **Typicality**:  Plaintiffs' claims are typical of the claims of the Class since the Plaintiffs purchased or leased a Class Vehicle containing the Starlink system, as did each member of the Class. Plaintiffs and Class Members were injured in the same manner by Subaru's uniform course of conduct alleged herein.  Plaintiffs and all Class Members have the same claims against Defendant relating to the conduct alleged herein, and the same events giving rise to Plaintiffs' claims for relief are identical to those giving rise to the claims of all Class Members.  Plaintiffs and all Class Members sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Defendant's wrongful conduct in selling and failing to remedy defective Class Vehicles. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class Members.

68.   **Adequacy**:  Plaintiffs are adequate representatives for the Class because their interests do not conflict with the

interests of the Class that they seek to represent. Plaintiffs have retained counsel competent and highly experienced in complex class action litigation—including consumer fraud and automobile defect class action cases—and they intend to prosecute this action vigorously.  The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

69.  **Superiority**:  A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Class.  The injury suffered by each individual Class Member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them by Defendant. Even if Class Members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision

by a single court. Upon information and belief, members of the Class can be readily identified and notified based upon, *inter alia*, the records (including databases, e-mails, dealership records and files, etc.) Defendant maintains regarding its sales and leases of Class Vehicles.

70.  Defendant has acted, and refuses to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

### CLAIMS FOR RELIEF

#### COUNT I
#### VIOLATION OF MAGNUSON-MOSS WARRANTY ACT
#### 15 U.S.C. §§ 2301, *et seq.* ("MMWA")
#### (On Behalf of Plaintiffs and the Class)

71.  Plaintiffs incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

72.  Plaintiffs are "consumers" within the meaning of the MMWA, 15 U.S.C. § 2301(3).

73.  Subaru is a "supplier" and "warrantor" within the meaning of the MMWA, 15 U.S.C. § 2301(4)-(5).

74.  The Class Vehicles are "consumer products" within the meaning of the MMWA, 15 U.S.C. § 2301(1).

75.  15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

76.   Subaru's express warranties are written warranties within the meaning of the MMWA, 15 U.S.C. § 2301(6).  The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

77.   Subaru breached these warranties as described in more detail above and below.  Without limitation, the Class Vehicles are equipped with defective Starlink infotainment systems that fail to operate as represented and warranted by Subaru.

78.   Plaintiffs and the other Class members have had sufficient direct dealings with either Subaru or its agents (e.g., dealerships and technical support) to establish privity of contract between Subaru, on one hand, and Plaintiffs and each of the other Class members on the other hand.  Nonetheless, privity is not required here because Plaintiffs and each of the other Class members are intended third-party beneficiaries of contracts between Subaru and its dealers, and specifically, of Subaru's implied warranties.  The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumers only.

79.   Affording Subaru a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile

here.  Indeed, Plaintiffs have already done so, and Subaru has failed to eliminate the defect.

80.  At the time of sale or lease of each Class Vehicle, Subaru knew, should have known, or was reckless in not knowing of its misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defect. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure under the MMWA and/or afford Subaru a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

81.  Plaintiffs and the other Class members would suffer economic hardship if they returned their Class Vehicles but did not receive the return of all payments made by them.  Because Subaru is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs and the other Class members have not re-accepted their Class Vehicles by retaining them.

82.  The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive

of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

83.   Plaintiffs individually and on behalf of the other Class members, seek all damages permitted by law, including diminution in value of the Class Vehicles, in an amount to be proven at trial.

**COUNT II**
**COMMON LAW FRAUD/FRAUDULENT CONCEALMENT**
**(On Behalf of Plaintiffs and the Class)**

84.   Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

85.   Subaru made material omissions concerning a presently existing or past fact. For example, Defendant did not fully and truthfully disclose to its customers the true nature of the inherent defect with the Starlink system. A reasonable consumer would have expected that the Starlink system would not be defective and pose a serious safety risk.

86.   The facts concealed or not disclosed by Subaru to Plaintiffs and Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease Defendant's Class Vehicles or pay a lesser price.

87.   Subaru had a duty to disclose the true performance of the Class Vehicles and the Starlink system because knowledge of the defect and its details were known and/or accessible only to

Subaru; Subaru had superior knowledge and access to the facts;
and Subaru knew the facts were not known to, or reasonably
discoverable by, Plaintiffs and Class members. Subaru also had a
duty to disclose because they made many general affirmative
representations about the about the qualities of their vehicles
with respect to the Starlink system, including references as to
convenience, safety, and general operability, as set forth
above, which were misleading, deceptive, and incomplete without
the disclosure of the additional facts set forth above regarding
the actual performance of their vehicles.

88.  Had Plaintiffs and the Class known about the defective
nature of the Class Vehicles and their Starlink systems, they
would not have purchased or leased the Class Vehicles or would
have paid less for them.

89.  As a result, Plaintiffs and the other Class Members
were fraudulently induced to lease and/or purchase the Class
Vehicles with the said defects and all of the resultant
problems.

90.  These omissions were made by Defendant with knowledge
of their falsity, and with the intent that Plaintiffs and Class
Members rely upon them.

91.  Plaintiffs and Class Members reasonably relied on
these omissions, and suffered damages as a result. To the extent
that Defendant's conduct was willful, oppressive or malicious,

Plaintiffs and Class Members are entitled to an award of punitive damages.

**COUNT III**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of Plaintiffs and the Class)**

92.   Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

93.   Subaru is and was at all relevant times a merchant with respect to the sale and lease of automobiles, including the Class Vehicles.

94.   Through advertisements, brochures, and statements made by authorized dealers, Subaru warranted several attributes and qualities of the Starlink systems in the Class Vehicles as detailed above, including with respect to performance, quality, operability, convenience, and safety.

95.   Defendant also expressly warranted that it would repair and/or replace defects in material and/or workmanship free of charge that occurred during the applicable warranty periods.

96.   Defendant breached its warranties by selling to Plaintiffs and the Class members the Class Vehicles with known infotainment system problems, which are not of high quality, and which are predisposed to fail prematurely and/or fail to function properly, presenting an unreasonable safety risk. Defendant also breached its warranty by failing to provide an

adequate repair when Plaintiffs and the Class members presented
their Class Vehicles to authorized Subaru dealers following
manifestation of the Starlink system defect.

97.  Subaru's warranties formed the basis of the bargain
that was reached when Plaintiffs and other Class members
purchased or leased their Class Vehicles equipped with defective
Starlink systems.

98.  Plaintiffs and Class members experienced the Starlink
system defect within the warranty period. Despite the existence
of express warranties (including but not limited to Subaru's New
Vehicle Limited Warranty), Subaru failed to inform Plaintiffs
and Class members that the Class Vehicles are defective and
failed to fix or eliminate the defect.

99.  As a result of Defendant's actions, Plaintiffs and
Class members have suffered economic damages including, but not
limited to, costly repairs, loss of vehicle use, diminished
value, substantial loss in value and resale value of the
vehicles, and other related damages.

100. Subaru was provided notice of the issues complained of
herein by numerous complaints filed against it, including the
instant lawsuit, within a reasonable amount of time.

101. Plaintiffs and the Class members have complied with
all obligations under the warranty, or otherwise have been

excused from performance of said obligations as a result of
Defendant's conduct described herein.

**COUNT IV**
**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**
**(On Behalf of Plaintiffs and the Class)**

102. Plaintiffs incorporate by reference each preceding and
succeeding paragraph as though fully set forth at length herein.

103. Defendant Subaru is and at all times was a merchant
with respect to the Class Vehicles.

104. A warranty that the Class Vehicles were in
merchantable quality and condition is implied by law in
transactions for the purchase and lease of Class Vehicles.
Defendant impliedly warranted that the Class Vehicles were of
good and merchantable condition and quality, fit for their
ordinary intended use, including with respect to safety,
reliability, operability, and substantial freedom from defects.

105. The Class Vehicles, when sold and leased, and at all
times thereafter, were not in merchantable condition and are not
fit for the ordinary purpose for which vehicles are used.
Specifically, the Class Vehicles are inherently defective in
that the infotainment systems—a central component to the Class
Vehicles—were not adequately tested as part of the manufacture
of Class Vehicles.  The Starlink system defect renders that
Class Vehicles unmerchantable, as they are unreliable, unsafe,

partially or fully inoperable, and not substantially free from defects.

106. Subaru was provided notice of the issues complained of herein by numerous complaints filed against it, including the instant lawsuit, within a reasonable amount of time.

107. Plaintiffs and the other Class members have had sufficient direct dealings with either Subaru or its agents (e.g., dealerships and technical support) to establish privity of contract between Subaru on one hand, and Plaintiffs and each of the other Class members on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the other Class members are intended third-party beneficiaries of contracts between Subaru and their dealers, and specifically, of Subaru's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumers only.

108. As a direct and proximate result of the breach of said warranties, Plaintiffs and Class members were injured, and are entitled to damages.

<u>COUNT V</u>
**VIOLATIONS OF THE OHIO DECEPTIVE TRADE PRACTICES ACT**
**OHIO REV. CODE ANN. §§ 4165.01, *et seq.* ("ODTPA")**
**(On Behalf of Plaintiff Udeen and the Class)**

109. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

110. A "person" who is injured or who is likely to be injured as a result of a deceptive practice may bring an action under the ODTPA. OHIO REV. CODE ANN. § 4165.03(A)(1)-(2).

111. The ODTPA defines a "person" broadly to include, *inter alia*, a corporation, business trust, partnership, unincorporated association, and limited liability company. *Id.* § 4165.01(D). As such, Plaintiff Udeen and Class members are "persons" within the meaning of the ODTPA.

112. Subaru's conduct alleged herein violated the ODTPA by virtue of Subaru doing the following in the course of business:

  a. Representing that good have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;

  b. Representing that goods are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and

c. Advertising goods or services with intent not to sell
them as advertised.

113. As a direct and proximate result of Defendant's
conduct as alleged herein and resulting violations of the ODTPA,
Plaintiff Udeen and members of the Class have been injured,
entitling them to actual damages pursuant to OHIO REV. CODE ANN. §
4165.03(A)(2). Plaintiff Udeen is also entitled injunctive
relief pursuant to OHIO REV. CODE ANN. § 4165.03(A)(1), reasonable
attorneys' fees pursuant to OHIO REV. CODE ANN. § 4165.03(B) due to
Subaru's willful engagement in the conduct described herein, and
all other relief that this Court deems appropriate.

**COUNT VI**
**VIOLATIONS OF THE OHIO CONSUMER SALES PRACTICES ACT**
**OHIO REV. CODE ANN. §§ 1345.01, *et seq*. ("OCSPA")**
**(On Behalf of Plaintiff Udeen and the Class)**

114. Plaintiffs incorporate by reference each preceding and
succeeding paragraph as though fully set forth at length herein.

115. Subaru is a "supplier" of Class Vehicles, within the
meaning of the OCSPA. *See* OHIO REV. CODE ANN. § 1345.01(C).

116. The OCSPA is broadly drafted, applying to the sale of
consumer goods "to an individual for purposes that are primarily
personal, family, or household [uses]." OHIO REV. CODE ANN. §
1345.01(A). Subaru's conduct in this case falls within the scope
of the OCPSA.

117. The OCSPA provides that "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction." OHIO REV. CODE ANN. § 1345.02(A).

118. The OCSPA broadly prohibits unfair, deceptive, and unconscionable practices in consumer sales transactions, including the sale of services. OHIO REV. CODE ANN. § 1345.02(A).

119. The OCSPA further provides that "a consumer" has a private cause of action for violations of the statute, and expressly allows for class actions. OHIO REV. CODE ANN. § 1345.09.

120. As detailed herein, Subaru's conduct was unfair, deceptive, and unconscionable.

121. Subaru acted in the face of prior notice that its conduct was deceptive, unfair, or unconscionable. Material misrepresentations concerning the qualities and performance of Starlink systems in the Class Vehicles, as well as material omissions concerning the defect, constitute a violation of the statute.

122. It is also a deceptive act or practice for purposes of the OCSPA if a supplier makes representations, claims, or assertions of fact in the absence of a reasonable basis in fact. *See* OHIO REV. CODE ANN. § 109:4-3-10(A).

123. As a direct and proximate result of Subaru's violations of the OCSPA, Plaintiff Udeen and members of the Class have been injured.

- 37 -

124. Plaintiff Udeen and the Class members have suffered injuries in fact and actual damages, including but not limited to overpayment for their Class Vehicles and financial losses from the devaluation of their Class Vehicles, all resulting from Defendant's conduct and practices in violation of the OCSPA.

125. These injuries are of the type that the OCSPA was designed to prevent and are the direct and proximate result of Subaru's unlawful conduct

### COUNT VII
### VIOLATION OF THE TENNESEEE CONSUMER PROTECTION ACT
### TENN. CODE §§ 47-18-101, *et seq.* ("TNCPA")
### (On Behalf of Plaintiff Udeen and the Class)

126. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

127. Plaintiff Udeen and the Class are "natural persons" and "consumers" within the meaning of TENN. CODE § 47-18-103(2).

128. Defendant is a "person" within the meaning of TENN. CODE § 47-18-103(2).

129. Subaru's conduct complained of herein affected "trade," "commerce" or "consumer transactions" within the meaning of TENN. CODE § 47-18-103(19).

130. The TNCPA prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce," including but not limited to: "Representing that goods or services have . . . characteristics, [or] . . . benefits . . .

that they do not have . . . .”; “Representing that goods or services are of a particular standard, quality or grade . . . if they are of another”; and “Advertising goods or services with intent not to sell them as advertised.” TENN. CODE § 47-18-104.

131. Subaru violated the TNCPA by engaging in unfair or deceptive acts, including representing that Class Vehicles have characteristics or benefits that they did not have; representing that Class Vehicles are of a particular standard, quality, or grade when they are of another; and advertising Class Vehicles with intent not to sell them as advertised.

132. In the course of its business, Subaru willfully failed to disclose and actively concealed the defect discussed herein and otherwise engaged in activities with a tendency or capacity to deceive. Subaru also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Class Vehicles.

133. Subaru knew the Starlink system was defective and that it did not operate as advertised, but concealed all of that information.

134. Subaru was also aware that it valued profits over safety, and that it was manufacturing, selling, and distributing

vehicles throughout the United States that did not perform as advertised and jeopardized the safety of the vehicle's occupants. Subaru concealed this information as well.

135. By failing to disclose the defect, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, Subaru engaged in deceptive business practices in violation of the TNCPA.

136. Subaru's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff Udeen and the other Class members, about the true performance of the Starlink system, the quality of the Subaru brand, and the true value of the Class Vehicles.

137. Subaru intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiff Udeen and the Class.

138. Subaru knew or should have known that its conduct violated the TNCPA.

139. As alleged above, Subaru made material statements about the safety and performance of the Class Vehicles and the Subaru brand that were either false or misleading.

140. Subaru owed Plaintiff Udeen a duty to disclose the true safety, performance, and reliability of the Class Vehicles,

and the devaluing of safety and performance at Subaru, because
Subaru:

        a.   Possessed exclusive knowledge that it valued
           profits and cost-cutting over safety and
           performance, and that it was manufacturing,
           selling, and distributing vehicles throughout the
           United States that did not perform as advertised;

        b.   Intentionally concealed the foregoing from and
           the Class; and/or

        c.   Made incomplete representations about the safety
           and performance of the Class Vehicles generally,
           and the defective Starlink system in particular,
           while purposefully withholding material facts
           from and the Class that contradicted these
           representations.

141. Because Subaru fraudulently concealed the Starlink
system defect and the true performance of it and Class Vehicles,
the value of the Class Vehicles has greatly diminished,
including in part due to a raft of negativity associated with
these vehicles and the Starlink system. The Class Vehicles are
now worth significantly less than they otherwise would be.

142. Subaru's concealment of the defective Starlink systems
and the true performance of the Class Vehicles was material to
Plaintiff Udeen and the Class.

143. Plaintiff and the Class suffered ascertainable loss caused by Subaru's misrepresentations and concealment of and failure to disclose material information. Class members who purchased the Class Vehicles either would have paid less for their vehicles or would not have purchased or leased them at all but for Subaru's violations of the TNCPA.

144. Subaru had an ongoing duty to customers to refrain from unfair and deceptive practices under the TNCPA. Owners and lessees of the Class Vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result of Subaru's deceptive and unfair acts and practices made in the course of its business.

145. Subaru's violations present a continuing risk to Plaintiff Udeen as well as to the general public. Subaru's unlawful acts and practices complained of herein affect the public interest.

146. As a direct and proximate result of Subaru's violations of the TNCPA, Plaintiff Udeen and the Class have suffered injury-in-fact and/or actual damage.

147. Pursuant to TENN. CODE § 47-18-109(a), Plaintiff Udeen, individually and on behalf of the other Class members, seeks monetary relief against Subaru measured as actual damages in an amount to be determined at trial, treble damages as a result of

Subaru's willful or knowing violations, and any other just and proper relief available under the TNCPA.

### COUNT VIII
**VIOLATIONS OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
FLA. STAT. § 501.201, *et seq*. ("FDUTPA")
(On Behalf of Plaintiff Jeffery and the Class)**

148. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

149. Plaintiff Jeffery and Class members are "consumers" within the meaning of FLA. STAT. § 501.203(7).

150. Subaru engaged in "trade or commerce" within the meaning of FLA. STAT. § 501.203(8).

151. The FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." FLA. STAT. § 501.204(1).

152. Subaru's acts and practices, described herein, are unfair in violation of Florida law because it violates Florida public policy and warranty laws requiring a manufacturer to ensure that goods it places on the market are fit for their ordinary and intended purposes.

153. Subaru acted in an unethical, unscrupulous, outrageous, oppressive, and substantially injurious manner, in at least the following respects:

a.   Subaru promoted and sold or leased Class Vehicles laptops it knew were defective;

b.   Subaru failed to disclose the Starlink system defect, and represented through advertising and other sources that the Starlink system possesses particular qualities that were inconsistent with Subaru's actual knowledge of the system;

c.   Subaru made repairs and provided replacements that caused Plaintiff to experience repeated instances of failure, rendering the New Vehicle Limited Warranty useless; and

d.   Subaru minimized the scope and severity of the problems with the Class Vehicle Starlink systems, refusing to acknowledge that they are defective, and failing to provide adequate relief to consumers.

154. The gravity of harm resulting from Subaru's unfair conduct outweighs any potential utility. The practice of selling and leasing defective Class Vehicles without providing an adequate remedy to cure the defect harms the public at large and is part of a common and uniform course of wrongful conduct.

155. The harm from Subaru's conduct was not reasonably avoidable by consumers. Even after receiving a large volume of consumer complaints, Subaru did not disclose the defect.

Plaintiff did not know of, and had no reasonable means of discovering, that the Subaru Starlink system is defective.

156. Subaru also engaged in deceptive trade practices in violation of Florida law, by promoting the safety, convenience, and operability of the Starlink system while willfully failing to disclose and actively concealing the Starlink system's defect nature.

157. Subaru committed deceptive acts and practices with the intent that consumers, such as Plaintiff Jeffery and Class members, would rely upon Subaru's representations and omissions when deciding whether to purchase or lease a Class Vehicle.

158. Plaintiff and Class members suffered ascertainable loss as a direct and proximate result of Subaru's unfair and deceptive acts or practices. Had Plaintiff Jeffery and Class members known that the Class Vehicles are equipped with the defective Starlink systems, they would not have purchased and leased the Class Vehicles, or would have paid significantly less for the them. Among other injuries, Plaintiff and Class members overpaid for their Class Vehicles, and their Class Vehicles suffered a diminution in value.

159. Plaintiff Jeffery and the Class members are entitled to recover their actual damages under FLA. STAT. § 501.211(2) and reasonable attorneys' fees under FLA. STAT. § 501.2105(1).

160. Plaintiff Jeffery also seeks an order enjoining Subaru's unfair and deceptive acts or practices pursuant to FLA. STAT. § 501.211, and any other just and proper relief available under the FDUTPA.

## COUNT VIII
## UNJUST ENRICHMENT
### (On Behalf of Plaintiffs and the Class)

161. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

162. This claim is pleaded in the alternative to the other claims set forth herein.

163. As the intended and expected result of its conscious wrongdoing, Defendant has profited and benefited from the purchase and lease of Class Vehicles equipped with defective Starlink systems.

164. Defendant has voluntarily accepted and retained these profits and benefits, with full knowledge and awareness that, as a result of Defendant's misconduct alleged herein, Plaintiffs and the Class were not receiving Class Vehicles of the quality, nature, fitness, or value that had been represented by Defendant, and that a reasonable consumer would expect. Specifically, Plaintiffs and the Class members expected that when they purchased or leased Class Vehicles, they would not be equipped with a defective infotainment system.

165. Defendant has been unjustly enriched by its fraudulent, deceptive, unlawful, and unfair conduct, and withholding of benefits and unearned monies from Plaintiffs and the Class, at the expense of these parties.

166. Equity and good conscience militate against permitting Defendant to retain these profits and benefits.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, hereby request that this Court enter an Order against Defendant providing the following:

A. Certification of the proposed Class, appointment of Plaintiffs and their counsel to represent the proposed Class, and notice to the proposed Class to be paid by Defendant;

B. Damages, costs, restitution, including punitive damages, penalties, and disgorgement in an amount to be determined at trial;

C. An Order requirement Subaru to pay both pre- and post-judgment interest on any amounts awarded;

D. An order temporarily and permanently enjoining Subaru from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

E. Injunctive relief in the form of a recall or free replacement program;

F.    Equitable relief in the form of buyback of the Class

Vehicles;

G.    An award of costs and attorneys' fees; and

H.    Such other or further relief as may be appropriate.


## JURY DEMAND

Plaintiffs hereby demand a trial by jury for all claims so

triable.


Respectfully submitted,

Dated: __11/28/2018__                     _/ J. Llewellyn Mathews_
                                          J. Llewellyn Mathews
                                          N.J. Attorney i.d. 004591973

                          And:

                          Benjamin F. Johns (NJ-ID 03818-
                          2005)
                          Andrew W. Ferich NJ-ID 01505-2012)
                          CHIMICLES & TIKELLIS LLP
                          One Haverford Centre
                          361 West Lancaster Avenue
                          Haverford, PA 19041
                          Telephone: (610) 642-8500
                          Facsimile: (610) 649-3633
                          bfj@chimicles.com
                          awf@chimicles.com

                          *Counsel for Plaintiffs
                          and the Class*

CERTIFICATION UNDER R.4:5-1(b)

I hereby certify pursuant to Rule 4:5-1(b) that the matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor is any other action or arbitration proceeding contemplated.

I further certify that I know of no other parties who should be joined in this action pursuant to Rule 4:28 or who are subject to joinder pursuant to Rule 4:29-1(b) because of potential liability to any party on the basis of the same transactional facts.

Dated: _11/28/2018_                    J. Llewellyn Mathews
                                       J. Llewellyn Mathews
                                       N.J. Attorney i.d. 004591973


CERTIFICATION UNDER R.1:38-7(c)

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

Dated: _11/28/2018_                    J. Llewellyn Mathews
                                       J. Llewellyn Mathews
                                       N.J. Attorney i.d. 4591973

- 49 -

# Civil Case Information Statement

## Case Details: CAMDEN | Civil Part Docket# L-004425-18

**Case Caption:** UDEEN CHAD  VS SUBARU OF AMERICA, INC.

**Case Initiation Date:** 11/28/2018

**Attorney Name:** J LLEWELLYN MATHEWS

**Firm Name:** J. LLEWELLYN MATHEWS

**Address:** 309 FELLOWSHIP RD STE 200
MT. LAUREL NJ 08054

**Phone:**

**Name of Party:** PLAINTIFF : UDEEN, CHAD

**Name of Defendant's Primary Insurance Company**
(if known): Unknown

**Case Type:** COMPLEX COMMERCIAL

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Hurricane Sandy related?** NO

**Is this a professional malpractice case?**  NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** YES

**If yes, is that relationship:** Other(explain)   Contractual

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**


**Do you or your client need any disability accommodations?** NO
 **If yes, please identify the requested accommodation:**


**Will an interpreter be needed?** NO
 **If yes, for what language:**


I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

11/28/2018
Dated

/s/ J LLEWELLYN MATHEWS
Signed

```
CAMDEN COUNTY
SUPERIOR COURT
HALL OF JUSTICE
CAMDEN            NJ 08103
                                TRACK ASSIGNMENT NOTICE
COURT TELEPHONE NO. (856) 379-2200
COURT HOURS  8:30 AM - 4:30 PM


                    DATE:   NOVEMBER 28, 2018
                    RE:     UDEEN CHAD  VS SUBARU OF AMERICA, I NC.
                    DOCKET: CAM L -004425 18


     THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 4.

     DISCOVERY IS PRESUMPTIVELY 450 DAYS BUT MAY BE ENLARGED OR SHORTENED BY THE
JUDGE AND RUNS FROM THE FIRST ANSWER OR 90 DAYS FROM SERVICE ON THE FIRST
DEFENDANT, WHICHEVER COMES FIRST.
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.


     THE MANAGING JUDGE ASSIGNED IS:  HON STEVEN J. POLANSKY


      IF YOU HAVE ANY QUESTIONS, CONTACT TEAM      101
AT:  (856) 379-2200 EXT 3060.


     IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
 CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
     PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH R.4:5A-2.
                    ATTENTION:
                         ATT: J L. MATHEWS
                         J. LLEWELLYN MATHEWS
                         309 FELLOWSHIP RD STE 200
                         MT. LAUREL      NJ 08054


ECOURTS
```

J. LLEWELLYN MATHEWS
Attorney-at-Law
N.J. Attorney i.d.# 4591973
309 Fellowship Road, Suite 200
Mt. Laurel, NJ 08054
609-519-7744 (voice)
609-257-4110 (fax)
(Client hours by appointment only)
jlmathews@jlmesq.com

And:
CHIMICLES & TIKELLIS LLP
One Haverford Centre
361 W. Lancaster Ave.
Haverford, PA 19041
(610) 642-8500
Benjamin F. Johns (NJ-ID 03818-2005)
Andrew W. Ferich (NJ-ID 01505-2012)
bfj@chimicles.com
awf@chimicles.com

***Attorneys for Plaintiffs and the Putative Class***

| | |
|---|---|
| CHAD UDEEN and MARY JANE JEFFERY, on behalf of themselves and all others similarly situated,<br><br>                       Plaintiffs,<br><br>     v.<br><br>SUBARU OF AMERICA, INC.,<br><br>                  Defendant. | SUPERIOR COURT OF NEW JERSEY<br>CAMDEN COUNTY – LAW DIVISION<br><br>DOCKET NO.: CAM-L-4425-18<br><br>Civil Action<br><br><br>**ACKNOWLEDGMENT OF SERVICE** |

      Pursuant to R. 4:4-6, the undersigned hereby acknowledges service of the Complaint, Case Information Statement and Notice of Track Assignment filed in this action on November 28, 2018.

Dated:   12/6/18

Neal Walters (020901993)
Casey Watkins (060122014)
Ballard Spahr LLP
210 Lake Drive East
Suite 200
Cherry Hill, NJ  08002-1163
Phone:  (856) 761-3438
Fax:   (856) 761-1020

Attorney for Defendant
  Subaru of America, Inc.