NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| CHAD UDEEN, et al., *on behalf of themselves and all others similarly situated*, | |
| Plaintiffs, | Civil No. 18-17334 (RBK/JS) |
| v. | **OPINION** |
| SUBARU OF AMERICA, INC., and SUBARU CORPORATION | |
| Defendants. | |

**KUGLER**, United States District Judge:

This matter is before the Court on Plaintiffs' unopposed motion for Preliminary Approval of Class Action Settlement (Doc. No. 43). Plaintiffs seek preliminary approval of the parties' Settlement Agreement (Doc. No. 44-1 ("Agreement")). Plaintiffs' motion is **GRANTED**.

I. **BACKGROUND**

A. **Initial Suit and Litigation History**

This lawsuit began on November 28, 2018, when representative Plaintiffs Chad Udeen and Mary Jane Jeffery filed suit in the Superior Court of New Jersey, Law Division, Camden County. (Doc. No. 1 at ¶ 1). Defendant Subaru of America, Inc. ("SOA") then removed the case to this Court on December 18, 2018, claiming jurisdiction under 28 U.S.C. § 1332(d). (*Id*. at ¶ 5). Later, the Court appointed Chimicles Schwartz Kriner & Donaldson-Smith LLP and Wilentz, Goldman & Spitzer, P.A. as Interim Co-Lead Counsel.[1] (Doc. No. 23). On January 31, 2019, Plaintiffs filed

---

[1] The Court understands that counsel Daniel R. Lapinski has changed firms, such that Motley Rice LLC is now also acting as Interim Co-Lead Counsel.

1

their First Amended Class Action Complaint (Doc. No. 24 ("Compl.")), adding Lydia Runkel, Michael Bolick, Gary Gilpin, Alicia Smith, and Susan Williams as representative plaintiffs, and Subaru Corporation ("SBR") as a defendant. The amended complaint was brought on behalf of all persons in the United States who bought or leased various Subaru models equipped with the Starlink infotainment system, and alleged violations of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, the New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8-1, *et seq.*, common law fraud, breach of express warranty, breach of the implied warranty of merchantability, unjust enrichment, and violations of the consumer protection laws of various states. (Compl. at ¶¶ 122–328).

On February 28, 2019, Defendants filed a motion to dismiss. (Doc. No. 28). The parties subsequently participated in two mediation sessions with retired U.S. District Judge Dennis M. Cavanaugh, where they engaged in arm's-length negotiation and reached a settlement. The motion to dismiss has since been terminated.

### B. Proposed Settlement

The proposed settlement class is defined as:

> All residents of the continental United States or Hawaii or Alaska who currently own or lease, or previously owned or leased, a Settlement Class Vehicle originally purchased or leased in the continental United States, including Alaska or Hawaii. Excluded from the Settlement are SOA, SBR, SOA's employees, SBR's employees, employees of SOA's and/or SBR's affiliated companies, SOA's and SBR's officers and directors, dealers that currently own Settlement Class Vehicles, all entities claiming to be subrogated to the rights of Settlement Class Members, issuers of extended vehicle warranties, and any Judge to whom the Litigation is assigned.

(Agreement at ¶ III.1). In turn, "Settlement Class Vehicle" is defined as: "[M]odel year 2017 Subaru Impreza, 2018 Subaru Impreza, 2018 Subaru Outback, 2018 Forester, 2018 Subaru Legacy, 2018 Subaru Crosstek, and 2018 Subaru BRZ vehicles equipped with a Generation 3.0 Starlink Infotainment System, manufactured by Harman International Industries, Inc." (Agreement at II.

2

26). Defendants do not admit any wrongdoing, and class members will relinquish any qualifying claims related to the Starlink infotainment system. (*Id*. at IV.1, V.3). In exchange, Defendants agree to: (1) extend existing warranty coverage related to the Starlink system to five years or 100,000 miles, with monetary compensation provided to class members who previously purchased extended warranty coverage (*id*. at VI.A.1); (2) provide monetary or coupon compensation to class members who made multiple trips to authorized Subaru dealers complaining of Starlink malfunctions (*id*. at VI.B.1); (3) provide monetary compensation to class members who had to wait more than one full day to receive a replacement Starlink unit during a specified period (*id*. at VI.C.1–2); and (4) reimburse class members for certain repair-related expenses, including rental car and ride-hailing expenses (*id*. at VI.D.1). The parties estimate that value of these forms of relief will exceed $6,250,000. (Doc. No. 44 ("Pls.' Brief")).

Class members will automatically receive the warranty extension but will need to submit a Claim Form and supporting documentation in order to receive monetary compensation. (Agreement at VI.E.1). JND Legal Administration Co. will serve as Settlement Administrator, (*id*. at II.25), and will process submitted claims, with class members having the right to appeal any adverse determinations to the Better Business Bureau (*id*. at VII.C.1). Defendants will be responsible for the costs of settlement administration. (*Id*. at VI.G.1).

## II. DISCUSSION

The Court must determine whether to (1) preliminarily approve the parties' proposed Settlement Agreement; and (2) provisionally certify the proposed settlement classes under Federal Rule of Civil Procedure 23.

### A. Preliminary Approval of the Proposed Settlement Agreement

Review of a proposed class action settlement is a two-step process: (1) preliminary approval and (2) a subsequent fairness hearing. *See Atis v. Freedom Mortgage Corp.*, Civil No. 15-03424 (RBK/JS), 2018 WL 5801544, at *2 (D.N.J. Nov. 6, 2018). At the first stage, the parties submit the proposed settlement to the court, which makes a preliminary fairness evaluation. *Id.* If the proposed settlement is preliminarily acceptable, the Court directs that notice be provided to all class members who would be bound by the proposed settlement to afford them an opportunity to be heard on, object to, and opt out of the settlement. *Id.*; Fed. R. Civ. P. 23(c)(2), (e)(1), (e)(5).

At the second stage, after class members are notified of the settlement, the Court holds a formal fairness hearing where class members may object to the settlement. *See Shapiro v. All. MMA, Inc.*, Civil No. 17-2583 (RBK/AMD), 2018 WL 3158812, at *3 (D.N.J. June 28, 2018); Fed. R. Civ. P. 23(e). If the Court concludes that the settlement is "fair, reasonable and adequate," the settlement is given final approval. Fed. R. Civ. P. 23(e)(2). A court considering final approval of a class action settlement must evaluate the settlement under the factors set out in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).

a. The Agreement is Entitled to a Presumption of Fairness

"Preliminary approval is not binding, and it is granted unless a proposed settlement is obviously deficient." *Shapiro*, 2018 WL 3158812, at *2; *see also Rudel Corp. v. Heartland Payment Sys., Inc.*, No. 16-cv-2229, 2017 WL 4422416, at *2 (D.N.J. Oct. 4, 2017) (applying "obviously deficient" standard to preliminary approval of class action settlement). Generally, "[w]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *Shapiro*, 2018 WL 3158812 (quoting *In re Nasdaq Mkt.-Makers Antitrust*

4

*Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997)). "A settlement is presumed fair when it results from "arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Rudel Corp.*, 2017 WL 4422416, at *2 (citations omitted).

These standards are met here. The proposed Agreement appears to be the result of an arm's-length negotiation between experienced counsel, reached during mediation with Judge Cavanaugh. *See Alves v. Main*, No. 01-cv-789, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012) ("The participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties.") *aff'd*, 559 F. App'x 151 (3d Cir. 2014). Although "the independence of a mediator is not necessarily assumed when the parties bargain before a hired mediator," the Court finds that the sophisticated parties in this case engaged in sincere negotiations after meaningful discovery. *See Shapiro*, 2018 WL 3158812, at *2.

    b. The *Girsh* Factors Support Preliminary Approval

Although the above analysis is sufficient for preliminary approval, it is important to consider the final approval factors during this stage so as to identify any potential issues that could impede the offer's completion. *See, e.g.*, *Singleton v. First Student Mgmt. LLC*, 2014 WL 3865853, at *5–6 (D.N.J. Aug. 6, 2014). The Third Circuit requires evaluation of the following factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Girsh, 521 F.2d at 157.

The first *Girsh* factor supports preliminary approval because the potential costs of continued motion practice and trial in this case could be significant. It is too early to consider the second factor because any assessment by this Court of the reaction of the class to the settlement at this time would be mere guesswork. However, the third factor at least modestly supports approval. Although the discovery process has not been overly extensive in this case, the Plaintiffs have been able to review documents produced by the Defendants and have conducted a deposition, providing them with a clear understanding of the strengths and weaknesses of their case. (*See* Pls.' Brief at 18–19).

The fourth, fifth, and sixth *Girsh* factors support preliminary approval. Risk is inherent in litigation, and the Plaintiffs candidly disclose the potential difficulties facing their case. (*Id*. at 21). The seventh factor is not relevant, as the ability of Defendants to withstand greater judgment "is most relevant when the defendant's professed inability to pay is used to justify the amount of the settlement." *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 440 (3d Cir. 2016). Such an argument is not made here.

Finally, the Court finds that the eighth and ninth *Girsh* factors support preliminary approval. The parties attest that the estimated value of the settlement to class members will exceed $6.2 million and will be delivered in a fairly timely fashion by the standards of complex litigation. Further, the Agreement's allocation of monetary compensation is fair, as it provides such compensation in proportion to the harm suffered by class members. Given the litigation risks that Plaintiffs have identified, the provision of substantial, targeted, and timely relief in the Agreement is certainly within the range of reasonableness.

As such, no *Girsh* factor weighs against settlement and many are in favor. The proposed settlement does not appear to unfavorably benefit the class representatives or any segment of the

class.[2] The Court therefore finds, as a preliminary matter, that the proposed settlement is fair, adequate, and reasonable.

## B. Certification of Settlement Classes

Having preliminarily approved the parties' Agreement, the Court next considers whether to provisionally certify the class for settlement purposes only. The Court will do so.

"Rule 23 of the Federal Rules of Civil Procedure allows this Court to certify a class for settlement purposes only." *Chemi v. Champion Mortg.*, No. 05-cv-1238, 2009 WL 1470429, at *6 (D.N.J. May 26, 2009). To certify a class for settlement purposes, a district court must determine that the requirements for class certification under Rule 23(a) and (b) are met. *See In re Pet Food Prods. Liability Litig.*, 629 F.3d 333, 341 (3d Cir. 2010). Under Rule 23(a), the parties must demonstrate:

> (1) numerosity (a "class so large that joinder of all members is impracticable");
> (2) commonality ("questions of law or fact common to the class");
> (3) typicality (named parties' claims and defenses "are typical . . . of the class"); and
> (4) adequacy of representation (representatives "will fairly and adequately protect the interests of the class").

*Id.* at 341 n.14 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997)) (alterations omitted). Under Rule 23(b)(3), certification is proper if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

A plaintiff bears the burden of demonstrating that these requirements are met by a preponderance of the evidence, and the district court "must make whatever factual and legal

---

[2] The Court emphasizes that any reasonable payments to Representative Plaintiffs and Class Counsel are subject to approval. *See Bernhard v. TD Bank, N.A.*, No. 08-cv-4392, 2009 WL 3233541, at *2 (D.N.J. Oct. 5, 2009).

inquiries are necessary and must consider all relevant evidence and arguments presented by the parties." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 306 (3d Cir. 2008). Thus, a district court should certify a class "only if the court is 'satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Beck v. Maximus, Inc.*, 457 F.3d 291, 297 (3d Cir. 2006) (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).

1. Rule 23(a)

    a. Numerosity

Numerosity is satisfied here, as it is presumed "if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40." *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001). The Plaintiffs cite evidence that there are approximately 514,000 class vehicles in the United States, indicating that there are hundreds of thousands of potential plaintiffs (Pls.' Brief at 25).

    b. Commonality/Predominance

When, as here, an action is brought under Rule 23(b)(3), the commonality requirement of Rule 23(a) "is subsumed by the predominance requirement" of Rule 23(b)(3). *Danvers Motor Co. v. Ford Motor Co.*, 543 F.3d 141, 148 (3d Cir. 2008) (quoting *Amchem Prods.*, 521 U.S. at 627). To certify a class under Rule 23(b)(3), "questions of law or fact common to class members" must "predominate over any questions affecting only individual members." This requirement is "far more demanding" than the commonality requirement set forth in Rule 23(a). *Amchem Prods.*, 521 U.S. at 623–24. "[W]here individual stakes are high and disparities among class members [are] great," courts should be hesitant to find that predominance exists. *Id.* at 625.

In this case there are numerous common questions regarding whether the class vehicles are defective, whether Defendants should have disclosed the alleged defect, whether the allegedly

8

concealed information was material to consumers, and whether class members were harmed by Defendant's actions. *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 314 (3d Cir. 1998) (finding predominance inquiry satisfied in case "involving common scheme to defraud"); *Alin v. Honda Motor Co., Ltd.*, No. 08-4825 (KSH)(PS), 2012 WL 8751045, at*5 (D.N.J. April 13, 2012) (finding commonality and predominance satisfied where "class vehicles allegedly suffer from defects that cause their air conditioning systems to break down, although there are differences as to how the breakdowns occur"). The individual issues chiefly pertain to damages, and "it has been commonly recognized that the necessity for calculation of damages on an individual basis should not preclude class determination when the common issues which determine liability predominate." *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 456 (3d Cir. 1977). The Court finds the proposed class preliminarily satisfies the commonality requirement of Rule 23(a) and the predominance requirement of Rule 23(b)(3).

    c. Typicality

The typicality requirement is satisfied when each class members' claims "arise from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Atis*, 2016 WL 7440465, at *7 (citing *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001)). The typicality requirement precludes certification of classes where the legal theory of the named plaintiff potentially conflicts with the legal theory of the unnamed class members. *See Atis*, 2016 WL 7440465, at *7 (citing *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994)). In this case, Plaintiffs and the class members claims all originate from the same allegedly defective product and Defendants' alleged actions to conceal that defect, relying on the same legal theories. Consequently, the typicality requirement is satisfied.

d. Adequacy

The fourth requirement of Rule 23(a) requires a plaintiff to show that as class representative he "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This "adequacy" requirement has two components: (1) whether Plaintiffs' counsel is qualified, experienced, and able to conduct the litigation; and (2) whether any conflicts of interest exist between the named parties and the class they seek to represent. *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d at 312.

Rule 23(g) sets forth the criteria for evaluating the adequacy of Plaintiffs' counsel. See Fed. R. Civ. P. 23(g); *Sheinberg v. Sorensen*, 606 F.3d 130, 132 (3d Cir. 2010); *Coyle v. Hornell Brewing Co.*, No. CIV. 08-2797 JBS/JS, 2011 WL 3859731, at *5 (D.N.J. Aug. 30, 2011) ("[W]hile Sheinberg does not directly address whether the Rule 23(g) factors are to be considered when evaluating the adequacy of class counsel prior to the certification of a class, the language of the opinion can be read to apply in such a circumstance."). Rule 23(g) directs the Court to consider

> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

The Court finds that Interim Co-Lead Counsel adequately represent the class as counsel. The firms have substantial experience in litigating class actions. *See, e.g.*, *Henderson v. Volvo Cars of N. Am., LLC*, Civil Action No. 09-cv-4146 (DMC)(JAD), 2010 U.S. Dist. LEXIS 151733, at *4 (D.N.J. Nov. 1, 2010) (appointing Chimicles law firm as interim lead counsel).

A named plaintiff is "adequate" if his interests do not conflict with those of the class. *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d at 312. There are no obvious conflicts between the representative Plaintiffs and the class members.

  2. Rule 23(b)(3)

As the proposed classes meet the requirements of Rule 23(a), the Court now turns to Rule 23(b), which imposes two additional requirements: "predominance" and "superiority. *See* Fed. R. Civ. P. 23(b)(3); *see also Rudel Corp.*, 2017 WL 4422416, at *3. As discussed above, predominance is satisfied here. As to superiority, Rule 23(b)(3) provides a four-factor list that a court may use to assess whether class adjudication is superior to other forms of adjudication:

- (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
- (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
- (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
- (D) the likely difficulties in managing a class action.

All four factors support class adjudication. Where individual claims are modest, class members' interest in bringing individual actions is low. *See Jones v. Commerce Bancorp, Inc.*, No. 05-cv-5600, 2007 WL 2085357, at *4 (D.N.J. July 16, 2007). In this case the individual claims are modest, while the number of class members, running into the hundreds of thousands, is quite large. Given these numbers, a class action is the most efficient manner of resolving these claims. Consequently, the Court finds that it will likely be able to certify the settlement class in this case.

**C. Approval of Class Notice**

In approving a class settlement, a district court must also "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1); *see also Shapiro*, 2018 WL 3158812, at *7 (D.N.J. June 28, 2018). To satisfy the notice requirement, the party proposing settlement must comply with the guidelines contained in Rule 23(c)(2) and

23(e)(1). *Id.* Rule 23(c)(2)(B) provides that in Rule 23(b)(3) class actions, the Court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. *See Shapiro*, 2018 WL 3158812, at *7. The notice must clearly and concisely state in plain, easily understood language:

   i. the nature of the action;
   ii. the definition of the class certified;
   iii. the class claims, issues, or defenses;
   iv. that a class member may enter an appearance through an attorney if the member so desires;
   v. that the court will exclude from the class any member who requests exclusion;
   vi. the time and manner for requesting exclusion; and
   vii. the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2).

The form of notice is committed to the district court's discretion, "subject to due process requirements." *Zimmer Paper Prods., Inc. v. Berger & Montague*, 758 F.2d 86, 90 (3d Cir. 1985). Due process requires notification (1) of "the nature of the pending litigation"; (2) of "the settlement's general terms"; (3) "that complete information is available from the court files"; and (4) "that any class member may appear and be heard at the Fairness Hearing." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 527 (D.N.J. 1997). Although the notice "need not be unduly specific," *In re Diet Drugs*, 226 F.R.D. at 518 (E.D. Pa. 2005), it must "describe, in detail, the nature of the proposed settlement, the circumstances justifying it, and the consequences of accepting and opting out of it." *Id.* (citing *In re Diet Drugs*, 369 F.3d 293, 308–10 (3d Cir. 2004)).

Under the parties proposed notice plan, the Settlement Administrator shall mail to the last known addresses of class members by first-class mail short-form postcard notice, which will direct class members to the settlement website where they may view the long-form notice. (Agreement at VIII.B.1). In plain English, the proposed postcard notice describes: (1) the nature of the action

and the claims; (2) the class; (3) the nature of the settlement and the benefits provided to class members; (4) how class members may exclude themselves from the settlement and the consequences of such exclusion; (5) how to obtain more information about the settlement; (6) the date of the fairness hearing; and (7) additional information on the fairness hearing. (Doc. No. 46-1). Such postcard notice is consistent with the notice provided in other class action settlements. *See In re Ins. Broker Antitrust Litig.*, 297 F.R.D. 136, 152 (D.N.J. 2013) (approving postcard notice with similar information). Further the proposed long-form notice that will be available online provides not only the same information as the postcard notice, but also offers greater detail on the terms of the settlement; how to submit a claim and the process for appealing a denied claim; the process for filing an objection; and the fees and expenses that will by sought by Interim Co-Lead Counsel. (*See* Agreement at Ex. B).

The forms "fairly, accurately, and neutrally describe the claims and parties in the litigation as well as the terms of the proposed settlement and the identity of persons entitled to participate in it." *See Shapiro*, 2018 WL 3158812, at *7 (citing *Foe v. Cuomo*, 700 F. Supp. 107, 113 (E.D.N.Y. 1988), *aff'd*, 892 F.2d 196 (2d Cir. 1989)). In short, they are "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Rule 23 and due process are both satisfied by the notice forms here.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs' motion is **GRANTED**. An order follows.

Dated: 10/04/2019 /s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Judge